**UNITED STATES BANKRUPTCY COURT**
**EASTERN DISTRICT OF NEW YORK**
----------------------------------------------------------X          Case No.: 23-42029-jmm
In re:

**MARGARITA ONASSIS PARLIONAS,**
**aka MARGARITA MARY VEKRAKOS,**

                                                 **Debtor.**

----------------------------------------------------------X          Adv. Proc. No.: 25-01022-jmm
**DEBRA KRAMER, Solely as**
**Chapter 7 Trustee for the Estate of**
**MARGARITA ONASSIS PARLIONAS**
**aka MARGARITA MARY VEKRAKOS,**

                                                 **Plaintiff,**

-against-

**EVANGELIA ANDREONE**

                                                 **Defendant.**
----------------------------------------------------------X

<u>**AMENDED ANSWER TO THE COMPLAINT**[1]</u>

        Defendant Evangelia Andreone aka Evangelia Parlionas (the "Defendant"), by and through

her undersigned attorneys, for its Amended Answer to the Complaint filed by Plaintiff Debra

Kramer, solely as Chapter 7 Trustee for the Estate of Margarita Onassis Parlionas aka Margarita

Mary Vekrakos (the "Plaintiff" or "Trustee") responds and alleges as follows, on knowledge as to

herself and it her own acts  and on information and belief as to all other matters:

**DEFENDANT'S ANSWER TO COMPLAINT**

1.        Defendant admits that Debtor transferred to Defendant a 25% ownership interest in YOYO

Lip Gloss, Inc. ("YOYO") during the course of *matrimonial proceedings* between the Debtor (*Wife*

or Debtor)() and Athanasios Parlionas (*Husband* or Athanasios). Defendant denies the allegation

that such 25% interest had a value of $252,500.00 (Imputed Value) or any other alleged value,

except admits only that an interest was transferred for more than a fair consideration. Defendant

denies that the transfer was fraudulent, improper, or otherwise subject to avoidance under the

Bankruptcy Code or applicable New York law. Defendant denies that Plaintiff is entitled to

recovery of said interest or its value. A state court has valued and allocated marital property, a

---

[1] The Defendant does not consent to the jurisdiction of the Bankruptcy Court and hereby demands to be heard by an article III judge at all stages of the proceedings.

1

subsequent fraudulent transfer action as now is academic. Plaintiff's attempt to recover the same value constitutes an impermissible double recovery and thus not permissible under any theory of law. The Defendant denies all remaining allegations in Paragraph 1.

2.      Defendant, the former wife of Athanasios denies the allegations of Pargraph 2, as UFCA does not apply to the marital assets vis-à-vis each others. On facts and merit, the transfer was with "fair consideration," as the Defendant obtained the Transfer to secure present advance or payment of antecedent debt in an amount which was not disproportionate small as compared with the value of the Transfer—the Debtor's personal guarantees to creditors were relieved in number far exceeding the impugned Value. Also, the Debtor was solvent at the time of the transfer and continued to be solvent thereafter, as  at that time, the fair salable value of her assets exceeded the amount that was required or was to be required at latter stage on the existing debts as they become absolute and matured. The transfer was made for reasonably equivalent value, including relief from personal guaranties on loans, day-to-day operational burdens, and legal and financial exposure as YOYO's performance deteriorated. YOYO was a distressed business with monthly interest-only loan payments of approximately $100,000, substantial capital needs, long lead times for buyer payments (often 6–8 months), and required continuous cash injections. The Debtor was no longer willing to risk her remaining assets, and that is when the Defendant volunteered to help the Debtor. Also, the Transfer did not deplete or otherwise diminish the value of the assets of the Debtor's estate remaining available to creditors; rather, the Transfer alleviated the Debtor's position, cementing her solvency. Defendant further denies that the Transfer occurred without consideration or while the Debtor was insolvent or rendered insolvent, and avers that the Debtor was not indebted to any qualifying triggering creditor (e.g., Sapphire) who could avoid the transfer under applicable New York law at the time. The Defendant denies factually and legally the applicability of UFCA to the Transfer.

3.      Defendant admits that she is the daughter of the Debtor.  Defendant denies that the transfer of the 25% ownership interest in YOYO Lip Gloss, Inc. was made with actual intent to hinder, delay, or defraud any creditor. Defendant denies that the Debtor did not receive fair consideration in exchange for the Transfer, and denies that any of the so-called "badges of fraud" alleged by Plaintiff are present or sufficient to establish actual fraud. Defendant denies each and every remaining allegation contained in Paragraph 3.  Plaintiff's reliance on Defendant's status as the

Debtor's daughter is legally irrelevant. Under the New York Debtor & Creditor Law (UFCA), insider status is not an element of a fraudulent conveyance cause of action. At most, a familial relationship is a non-determinative "badge of fraud" that does not, standing alone, establish fraudulent intent. Defendant denies that any such relationship supports a claim of actual or constructive fraud in this case. As far as the allegation of the "fail[ure] to disclosure the Transfer in the matrimonial proceeding, as noted in the Contempt Order" the Defendant lacks sufficient knowledge or information to admit or deny the same, as she was not a party to the said matrimonial proceeding. While Defendant is the Debtor's daughter, no actual fraud occurred. Defendant was not under court jurisdiction, not a party to the divorce, and had no obligation to disclose or refrain from receiving shares. The transfer was not hidden and did not impair creditor rights. Neither the Debtor nor Defendant drew a salary from YOYO; instead, Defendant injected working capital from her other companies, took no compensation, and worked tirelessly to protect credibility with vendors and lenders. By the time of the transfer, YOYO had faded from market relevance, was unprofitable, and required aggressive rescue efforts to stay afloat, with capital-intensive, slow-paying operations no longer trending in retail. Thus, the alleged Transfer (where stock was valueless) did not place anything beyond the reach of general creditors, and there is no diminution of which to complain (nor is there any triggering creditor with standing to complain, such as Sapphire). The Contempt Order referenced applies only to the Debtor in the matrimonial context and does not establish actual fraud as to Defendant or unrelated creditors under bankruptcy law. Also, UFCA does not apply to the factual settings here vis-à-vis as Athanasios is not a creditor in traditional sense, but an equitable owner.

4.      Irrespective of the wordings, there is no creditor -debtor relationship between estranged but un-divorced New York domestic relations partner. Plaintiff's claims are barred because the alleged "creditor" whose rights Plaintiff seeks to invoke — the Debtor's former spouse, Athanasios Parlionas — was not a "creditor" within the meaning of the New York Debtor & Creditor Law or 11 U.S.C. § 544(b). At all relevant times, Mr. Parlionas was merely a claimant to equitable distribution of marital property under the Domestic Relations Law, not a creditor owed a debt. Fraudulent conveyance law was not intended to apply to such matrimonial disputes, and Plaintiff therefore lacks standing to assert these claims. Plaintiff's claims are barred because the alleged transfer is not subject to avoidance under the New York Debtor & Creditor Law. The only alleged "creditor" whose rights Plaintiff seeks to assert — the Debtor's spouse in a matrimonial proceeding

3

— was not a creditor within the meaning of the UFCA or 11 U.S.C. § 544(b). Equitable distribution claims in a matrimonial proceeding do not create a debtor-creditor relationship, and thus cannot form the basis for a fraudulent conveyance action. Plaintiff's claims therefore fail as a matter of law due to this legal disability. Also, the Defendant denies the allegations in Paragraph 4 of the Complaint. Defendant specifically denies that the transfer was deliberately structured to defeat, impair, impede, or prejudice the rights of Athanasios Parlionas or any other creditor. Defendant further denies that the findings in the Contempt Order are binding upon her, as she was not a party to that matrimonial proceeding and had no opportunity to litigate or contest those findings. Regardless of the matrimonial court's contempt findings against Debtor, Defendant received the transfer in good faith, without fraudulent purpose, and provided value through her assumption of business liabilities and continuation of operations. Under DCL §278 and Bankruptcy Code §550(b), Defendant is protected as a good-faith transferee.

5.      Defendant denies that the Debtor transferred any property that is subject to avoidance or recovery under the Bankruptcy Code or New York law. Defendant denies that the Transfer was fraudulent, lacked consideration, or diminished the Debtor's estate in any manner. Defendant further denies that Plaintiff or the estate is entitled to recover the alleged value of the Transfer or any other relief.  Plaintiff is not entitled to recover any fair market value of the alleged Transfer because the 25% interest in YOYO Lip Gloss, Inc. was not the Debtor's property subject to creditors' claims, and no fraudulent conveyance occurred. Even if Plaintiff could establish a transfer, the Debtor received fair consideration, was solvent at all relevant times, and creditors suffered no prejudice. The plaintiff was already made whole at the time of Transaction, therefore she is not entitled to any further remuneration.  The Defendant denies each and every remaining allegation contained in Paragraph 5.

## JURISDICTION AND VENUE

6.      No response is required to Paragraph 6 as it states a legal conclusion. To the extent a response to Paragraph 6 is required, Defendant denies the allegations in Paragraph 6. Defendant more specifically denies if the Plaintiff is attempting to suggest the Bankruptcy Court jurisdiction over this Adversary Proceeding under "taxonomic change" of casting a " pre-existing, common law cause of action" as a core proceeding is a core proceeding ("core proceeding under 28 U.S.C.

4

§§ 157(b)(2)(A), (B), (E), (F), (H), and (O) and 1334"). It is denied that labeling a proceeding in bankruptcy court vests the bankruptcy court with jurisdiction on the issues or disputes.

7.      Defendant denies the allegations in Paragraph 7 of the Complaint. While the United States District Court for the Eastern District of New York has jurisdiction under 28 U.S.C. §§1334 and 157, the Defendant does not consent to the Bankruptcy court jurisdiction rather demands adjudication by an Article III court at all stages of the proceedings.

8.      Defendant denies the allegations in Paragraph 8 of the Complaint. Venue alone does not confer subject matter jurisdiction. The claims asserted here arise under state law fraudulent conveyance theories, which are private rights actions reserved for Article III courts.

9.      Denied. Defendant denies any consent to this Court's jurisdiction or authority to enter final judgments. Under *Stern v. Marshall,* 564 U.S. 462, 493-95, even statutorily core proceedings involving state-law fraudulent conveyances implicate Article III concerns when they do not derive from public rights or the bankruptcy process itself, depriving this Court of final adjudicatory power as per *Northern Pipeline Construction Company v. Marathon Pipe Line Company*, 458 U.S. 50 (1982).

10.     Denied.  To the extent a response to Paragraph 10 is required, Defendant denies the allegations in Paragraph, as "United States Bankruptcy Court for the Eastern District of New York" lacks jurisdiction over this proceeding and Defendant *demand* an article III adjudication for all phases of the adjudication of this Adversary Proceeding.

## THE PARTIES

11.     Defendant avers that it lacks knowledge and information sufficient to admit or deny the allegations in Paragraph 11 about the parties and to the rest of the allegation of standing, no response is required to the remainder of Paragraph 11 because it states legal conclusions. To the extent a response is required to the remainder of Paragraph 11, Defendant denies the allegations in the remainder of Paragraph 11, as the trustee might have the statutory standing, she lacks constitutional article III standing.

12.     Defendant admits that she is an individual residing at 11 The Hemlocks, Roslyn, New York 11576, and admits that she is the daughter of the Debtor. Defendant denies, however, that her status as the Debtor's daughter makes her an "insider" in any manner relevant to this proceeding.

### ALLEGATIONS APPLICABLE TO ALL CLAIMS FOR RELIEF

**I.  The Bankruptcy Filing and the Appointment of the Plaintiff**

13.      Defendant avers that it lacks knowledge and information sufficient to admit or  deny the allegations in Paragraph 13.

14. Defendant avers that it lacks knowledge and information sufficient to admit or deny the allegations in Paragraph 13.

15. Defendant avers that it lacks knowledge and information sufficient to admit or deny the allegations in Paragraph 13.

**II. The Predicate Creditor**

16.      Defendant avers that it lacks knowledge and information sufficient to admit or deny the allegations in Paragraph 16.

17.      Defendant avers that it lacks knowledge and information sufficient to admit or deny the allegations in Paragraph 17.

18.      Defendant avers that it lacks knowledge and information sufficient to admit or deny the allegations in Paragraph 18.  However now upon being provided a copy of the Chase Sapphire credit card, she admits that there is a statement reflecting a balance of $32,459.36 as of

19.      Defendant avers that it lacks knowledge and information sufficient to admit or deny the allegations in Paragraph 19. However now upon being provided a copy of the Chase Sapphire credit card of April 2021, the Chase Sapphire Credit Card shows a balance of $48. So, it is denied that the "the Debtor remained indebted to Chase in the amount of $31,941.23."

20.      Defendant avers that it lacks knowledge and information sufficient to admit or deny the allegations in Paragraph 20. However, it is denied that Debtor was ever insolvent or rendered insolvent at all time relevant to this litigation.

**III.    The Divorce Action and Transfer**

21.      Defendant avers that it lacks knowledge and information sufficient to admit or deny the allegations in Paragraph 21.

22.      Defendant avers that it lacks knowledge and information sufficient to admit or deny the allegations in Paragraph 22.

23.      Defendant avers that it lacks knowledge and information sufficient to admit or deny the allegations in Paragraph 23.

6

24.    Defendant avers that it lacks knowledge and information sufficient to admit or deny the allegations in Paragraph 24 but admit knowledge of the pendency of the litigation.

25.    Denied.

26.    Admitted in part. YOYO was formerly a distributor to large retailers.

27.    Denied.

28.    Defendant admits that on or about October 1, 2018, she received the Debtor's remaining 25% ownership interest in YOYO Lip Gloss, Inc. Defendant denies that the transfer was made "for no consideration." Defendant avers that she provided substantial value by assuming outstanding company debts and liabilities, including obligations personally guaranteed by the Debtor, and by continuing to fund and manage YOYO's distressed operations.

29.    Admitted.

30.    Admitted.

31.    Admitted.

32.    Defendant denies the allegations in Paragraph 32. Defendant specifically denies that the transfer violated matrimonial "Automatic Orders," as she was not a party to the divorce action between the Debtor and Athanasios and was not subject to the matrimonial court's jurisdiction or orders. And the Defendant was not aware of any restriction on the transfer of shares, especially when made the Debtor more than whole. She paid for her debts.  It was to keep a failing business alive, a legitimate part of the governance as the Debtor could not focus on work

33.    Defendant denies knowledge or information sufficient to form a belief as to the truth of the allegations contained in Paragraph 33 regarding the entry of a Contempt Order against the Debtor. Defendant further denies that the Contempt Order, entered solely against the Debtor, has any bearing on Defendant's rights, obligations, or liability in this proceeding. Defendant was not a party to the matrimonial action or subject to its automatic orders.

34.    Defendant denies knowledge or information sufficient to form a belief as to the truth of the allegations contained in Paragraph 34. Defendant denies that the Contempt Order is binding on her or has preclusive effect in this adversary proceeding.

35.    Admitted in part; denied in part. Defendant admits the quoted language from the Contempt Order as to undisputed facts in the matrimonial proceeding involving the Debtor and Athanasios. Defendant denies that these findings apply to or bind Defendant, who was the "third party"

recipient but not a participant in the Divorce Action, and had no knowledge or consent requirements under the automatic orders. Defendant further denies that YOYO was a "marital asset" in a manner includable in the bankruptcy estate under 11 U.S.C. § 541, as the transfer was pre-petition, for reasonably equivalent value (e.g., Defendant's assumption of risks and capital injections and retiring Debtor's debt). The Order does not evidence fraud under § 544(b)'s derivative standards, as no triggering creditor like Sapphire could avoid it based on matrimonial violations alone.

36.    Admitted in part; denied in part. Defendant admits that the Contempt Order contains findings against the Debtor (not Defendant) regarding her disobedience of the matrimonial court's automatic orders under Domestic Relations Law § 236(B)(2)(b), describing her actions as calculated to impair Athanasios's rights in the Divorce Action and constituting misconduct by omission. Defendant denies that these findings establish actual or constructive fraud under 11 U.S.C. § 544(b) or former N.Y. Debt. & Cred. Law §§ 273-276 as to general creditors (e.g., Sapphire), as the Order is limited to family law violations between spouses and does not address intent to defraud unrelated third-party creditors or the bankruptcy estate. Defendant further denies any implication that the transfer impaired creditor rights, as it was a legitimate family transfer for reasonably equivalent value (e.g., Defendant's capital injections and assumption of operational risks in a valueless, distressed YOYO and retiring the Debtors personal guarantees), which alleviated the Debtor's liabilities without diminishing assets available to creditors. The Order does not bind Defendant, who was not a party, and its matrimonial focus does not extend to § 544(b)'s derivative avoidance powers, which require proof of rights held by an actual triggering creditor like Sapphire under state law as the trustee is limited to actual creditor's substantive rights.

37.    Denied. Defendant denies that the Debtor's pre-petition 25% interest in YOYO Lip Gloss, Inc. ("YOYO") constitutes property of the bankruptcy estate under 11 U.S.C. § 541, as the transfer was completed pre-petition (October 2018) for more than reasonably equivalent value, including Defendant's assumption of operational burdens, relief from personal guaranties on loans, injections of working capital from her other companies, and tireless efforts to sustain a distressed, unprofitable business without compensation, thereby alleviating the Debtor's financial exposure and cementing her solvency rather than diminishing estate assets. The Contempt Order's valuation

of $252,500.00 is disputed, as YOYO had no positive fair market value at transfer—being capital-intensive with monthly interest-only payments of approximately $100,000, long lead times for payments (6-8 months), fading market relevance, and requiring aggressive rescue efforts to avoid collapse—and its findings are limited to matrimonial violations under New York Domestic Relations Law § 236(B)(2)(b), not binding on Defendant (a non-party) or determinative of estate property or fraud in bankruptcy. The interest is not estate property, as § 541 includes only the debtor's legal or equitable interests as of the petition date (May 2023), excluding pre-petition transfers and certain family support obligations or equitable interests for non-debtor descendants like Defendant. Defendant further denies any fraudulent transfer, as the action was a legitimate transfer of shares for more than fair consideration without intent to defraud general creditors (e.g., Sapphire), and Plaintiff's avoidance powers under § 544(b) are purely derivative, requiring an actual triggering creditor who could avoid under former N.Y. Debt. & Cred. Law §§ 273-276, which is not established here. Also, the trustee's powers limited to standing in the shoes of an actual unsecured creditor with allowable claim, without expansion beyond state-law rights.

38.    Denied. Defendant lacks sufficient knowledge or information to admit or deny the specific opportunities or conditions imposed on the Debtor to purge her contempt as outlined in the Contempt Order, including the payment of a $250.00 fine, $5,000.00 in counsel fees, or the placement of $252,500.00 in her attorney's escrow account or posting a bond in that amount, and therefore denies the same. Defendant further denies any relevance of these purgation terms to the present adversary proceeding, as they pertain solely to the Debtor's obligations in the matrimonial context under the Contempt Order and do not establish that the transferred YOYO interest constitutes property of the bankruptcy estate or was fraudulently conveyed to Defendant under 11 U.S.C. § 544(b) or former N.Y. Debt. & Cred. Law §§ 273-276. The transfer remains a legitimate family arrangement for reasonably equivalent value (e.g., Defendant's assumption of operational risks and capital injections), and the Contempt Order's purgation terms do not bind Defendant, a non-party, nor do they demonstrate intent to defraud general creditors like Sapphire, as required

for avoidance under the derivative limits of § 544(b. The trustee's avoidance power hinges on an actual creditor's state-law rights, not matrimonial penalties.

39.     Admitted in part; denied in part. Defendant admits that the transfer of the Debtor's 25% interest in YOYO Lip Gloss, Inc. ("YOYO") occurred on or about October 1, 2018.  Defendant denies that this temporal fact alone establishes a fraudulent conveyance or triggers avoidance under 11 U.S.C. § 544(b), as the transfer was made for reasonably equivalent value (e.g., Defendant's assumption of operational burdens, relief from personal guaranties, and capital injections into a distressed business), did not render the Debtor insolvent, and lacked intent to defraud general creditors like Sapphire. The Trustee's derivative avoidance power requires a qualifying triggering creditor with an allowable claim under § 502 who could avoid under state law, which is not shown merely by the timing. The Trustee's rights are limited to those of an actual creditor under state law, not expanded by lookback periods alone.

40.     Denied. Defendant denies that the transfer of the Debtor's 25% interest in YOYO Lip Gloss, Inc. ("YOYO") was made at a time when the Debtor was insolvent or that it rendered the Debtor insolvent, as the Debtor remained solvent post-transfer with assets exceeding liabilities, and the transfer actually improved her financial position by relieving her of personal guaranties on loans, day-to-day operational burdens, legal and financial exposure from a distressed, unprofitable business requiring monthly interest-only payments of approximately $100,000, substantial capital needs, and continuous cash injections—burdens which Defendant assumed without compensation, injecting working capital from her other companies to sustain YOYO. The transfer did not deplete or diminish the value of assets available to creditors but instead alleviated the Debtor's position, cementing her solvency and preserving value for the estate.

41.     Denied. Defendant denies that the Debtor did not receive fair consideration in exchange for the transfer of her 25% interest in YOYO Lip Gloss, Inc. ("YOYO"), as the Debtor received reasonably equivalent value, including relief from personal guaranties on loans, day-to-day operational burdens, and significant legal and financial exposure from a distressed, unprofitable business requiring monthly interest-only payments of approximately $100,000, substantial capital needs, and continuous cash injections—burdens which Defendant assumed without compensation, further injecting working capital from her other companies to sustain YOYO. The transfer alleviated the Debtor's financial risks and liabilities, preserving her solvency and enhancing the

value of assets available to creditors, rather than diminishing them. Moreover, the derivative nature of 11 U.S.C. § 544(b) requires Plaintiff to prove lack of fair consideration from the perspective of a triggering creditor like Sapphire with an allowable claim, which is not supported by the facts.

42.    Denied. Defendant denies that at the time of the transfer of the Debtor's 25% interest in YOYO Lip Gloss, Inc. ("YOYO") on or about October 1, 2018, the Debtor was indebted to creditors in a manner relevant to this proceeding or that she was not paying her obligations as they became due and owing, as the Debtor remained solvent with assets exceeding liabilities, and the transfer alleviated her financial burdens by relieving her of personal guaranties on loans and operational risks of a distressed business requiring monthly interest-only payments of approximately $100,000 and continuous cash injections—burdens assumed by Defendant without compensation.

43.    Denied. Defendant denies that as of the date of the transfer of the Debtor's 25% interest in YOYO Lip Gloss, Inc. ("YOYO") on or about October 1, 2018, there were actual existing unsecured creditors holding claims allowable under 11 U.S.C. § 502) who could have avoided the transfer under former N.Y. Debt. & Cred. Law (DCL) §§ 273-276. Plaintiff has not identified any specific creditor, including the alleged triggering creditor Sapphire or otherwise, with an allowable unsecured claim under § 502(e) (which applies to contingent or unliquidated claims of co-debtors or guarantors, not broadly to all creditors) that existed on October 1, 2018, and continued to hold such a claim at the petition date (May 2023), nor has Plaintiff demonstrated that any such creditor had the legal right to avoid the transfer under state law based on insolvency, lack of fair consideration, or actual fraud. The transfer was a legitimate family arrangement for reasonably equivalent value (e.g., Defendant's assumption of operational burdens, relief from personal guaranties, and capital injections into a distressed business), and no evidence supports that any creditor could have avoided it outside bankruptcy, as  the trustee's avoidance power under § 544(b) is strictly derivative, limited to the rights of an actual unsecured creditor with standing under applicable state law.

44.    Denied. Defendant denies that the transfer of the Debtor's 25% interest in YOYO Lip Gloss, Inc. ("YOYO") on or about October 1, 2018, was made with the actual intent to hinder, delay, or defraud the Debtor's creditors, including Athanasios. The transfer was a legitimate family arrangement to alleviate the Debtor's financial burdens, providing reasonably equivalent value

through Defendant's assumption of personal guaranties on loans, day-to-day operational responsibilities, and injections of working capital into a distressed, unprofitable business requiring monthly interest-only payments of approximately $100,000 and continuous cash support—efforts undertaken without compensation to sustain YOYO's viability. No intent to defraud general creditors like Sapphire or others is evidenced, as the transfer did not diminish assets available to the estate but rather preserved the Debtor's solvency. The Contempt Order's findings of intent to impair Athanasios's matrimonial rights under New York Domestic Relations Law § 236(B)(2)(b) are limited to the spousal context and do not establish actual fraud under 11 U.S.C. § 544(b) or former N.Y. Debt. & Cred. Law § 276 as to unrelated creditors, as Defendant was not a party to the Divorce Action and had no obligation to disclose the transfer to creditors outside that proceeding.

45.    Admitted in part; denied in part. Defendant admits that the Debtor transferred her 25% interest in YOYO Lip Gloss, Inc. ("YOYO") to Defendant, who is the Debtor's daughter, and that a daughter qualifies as a relative and thus an "insider" under 11 U.S.C. § 101(31)(A)(i) of the Bankruptcy Code ( does not apply to NYFCA). Defendant denies that this insider status establishes or implies a fraudulent conveyance under 11 U.S.C. § 544(b) or former N.Y. Debt. & Cred. Law §§ 273-276, as insider relationships in family contexts do not inherently render transfers fraudulent, particularly where the transfer was a legitimate arrangement providing reasonably equivalent value through Defendant's assumption of personal guaranties on loans, operational burdens, and capital injections into a distressed, unprofitable business without compensation— alleviating the Debtor's financial exposure and preserving her solvency rather than defrauding creditors like Sapphire.

46.    Admitted in part; denied in part. Defendant admits that the Contempt Order dated June 21, 2022, states that the Debtor transferred her 25% interest in YOYO Lip Gloss, Inc. ("YOYO") without the consent or knowledge of Athanasios during the pendency of the Divorce Action, and that the Debtor did not disclose the transfer in that proceeding, leading to the contempt finding under New York Domestic Relations Law § 236(B)(2)(b). Defendant had no knowledge of this. Defendant also denies that this non-disclosure or lack of consent establishes a fraudulent conveyance under 11 U.S.C. § 544(b) or former N.Y. Debt. & Cred. Law §§ 273-276 as to general creditors like Sapphire, as the Contempt Order's findings are limited to matrimonial automatic

order violations between spouses and do not bind Defendant, a non-party to the Divorce Action with no obligation to disclose or obtain consent for a family transfer. The transfer provided reasonably equivalent value (e.g., Defendant's assumption of operational burdens, relief from personal guaranties, and capital injections into a distressed business), lacked intent to defraud unrelated creditors, and occurred as a legitimate family arrangement to alleviate the Debtor's financial strain, preserving her solvency

47. Denied. Defendant denies that the transfer of the Debtor's 25% interest in YOYO Lip Gloss, Inc. ("YOYO") on or about October 1, 2018, was made as part of a scheme that started with the commencement of the Divorce Action on October 15, 2015, to divest the Debtor's interest in YOYO. The transfer was a legitimate family arrangement to alleviate the Debtor's financial burdens, occurring three years after the Divorce Action began, and was driven by YOYO's distressed financial state—requiring monthly interest-only payments of approximately $100,000, substantial capital needs, and continuous cash injections—rather than a pre-planned scheme to divest assets. Defendant provided reasonably equivalent value by assuming personal guaranties, operational responsibilities, and injecting working capital from her other companies without compensation, preserving the Debtor's solvency and not diminishing assets available to creditors like Sapphire. The Contempt Order's findings of intent to impair Athanasios's matrimonial rights under New York Domestic Relations Law § 236(B)(2)(b) are limited to the spousal context and do not establish a broader fraudulent scheme under 11 U.S.C. § 544(b) or former N.Y. Debt. & Cred. Law § 276, especially as Defendant, a non-party to the Divorce Action, had no involvement in any alleged scheme.

### CLAIMS FOR RELIEF
### FIRST CLAIM FOR RELIEF
#### (Avoidance and Recovery of Fraudulent Transfer
#### Under 11 U.S.C. §§ 544 and 550 and § 273 of the DCL)

48.     Paragraph 48 does not require a response. To the extent it does require a response, Defendant denies the allegations in Paragraph 48.

49.     Admitted in part; denied in part. Defendant admits the transfer occurred within six years of the Petition Date but denies it constitutes a fraudulent conveyance avoidable under § 544(b) or DCL § 273, as timing alone is insufficient without proof of no value or insolvency, which are absent here.

50. Denied. Defendant denies the Debtor was insolvent or rendered insolvent by the transfer, as it improved her position by transferring burdens to Defendant.

51.    Denied. Defendant denies lack of fair consideration, as value was provided.

52.    Denied as Reasonably equivalent value defeats DCL § 273.

53.    Defendant denies avoidance under §§ 544(b), 550, and DCL § 273, lacking triggering creditor.

54.    Denied. Defendant denies entitlement to relief, as claims fail.

<strong>SECOND CLAIM FOR RELIEF</strong><br>
<strong>(Avoidance and Recovery of Fraudulent Transfer<br>
Under 11 U.S.C. §§ 544 and 550 § 274 of the DCL)</strong>

55.    Paragraph 55 does not require a response. To the extent it does require a response, Defendant denies the allegations in Paragraph 55.

56.    Admitted in part; denied in part. Admit timing, deny fraud under DCL § 274.

57.    Deny unreasonably small capital post-transfer, as it relieved burdens.

58.    Denied.

59.    Denied.

60.    Denied.

61.    Denied.

<strong>THIRD CLAIM FOR RELIEF</strong><br>
<strong>(Avoidance and Recovery of Fraudulent Transfer<br>
Under 11 U.S.C. §§ 544 and 550 and § 275 of the DCL)</strong>

62.    Paragraph 62 does not require a response. To the extent it does require a response, Defendant denies the allegations in Paragraph 62.

63.    Paragraph 32 does not require a response. To the extent it does require a respons Defendant denies the allegations in Paragraph 63.

64.    No response is required to Paragraph 64 as it states a legal conclusion. To the extent a response to Paragraph 64 is required, Defendant denies the allegations in Paragraph 64.

65.    Defendant avers that it lacks knowledge and information sufficient to admit or deny the allegations in Paragraph 65.

66. No response is required to Paragraph 66 as it states a legal conclusion. To the extent a response to Paragraph 66 is required, Defendant denies the allegations in Paragraph 66.

67. No response is required to Paragraph 67 as it states a legal conclusion. To the extent a response to Paragraph 67 is required, Defendant denies the allegations in Paragraph 67.

68. No response is required to Paragraph 68 as it states a legal conclusion. To the extent a response to Paragraph 68 is required, Defendant denies the allegations in Paragraph 68.

**FOURTH CLAIM FOR RELIEF**
**(Avoidance and Recovery of Fraudulent Transfer**
**Under 11 U.S.C. §§ 544 and 550, and § 276 of the DCL)**

69. Paragraph 69 does not require a response. To the extent it does require a response, Defendant denies the allegations in Paragraph 69.

70. No response is required to Paragraph 70 as it states a legal conclusion. To the extent a response to Paragraph 70 is required, Defendant denies the allegations in Paragraph 71.

71. Denied.

72. No response is required to Paragraph 72 as it states a legal conclusion. To the extent a response to Paragraph 72 is required, Defendant denies the allegations in Paragraph 72 as explained in the foregoing paragraphs.

73. No response is required to Paragraph 73 as it states a legal conclusion. To the extent a response to Paragraph 73 is required, Defendant denies the allegations in Paragraph 73.

74. No response is required to Paragraph 74 as it states a legal conclusion. To the extent a response to Paragraph 74 is required, Defendant denies the allegations in Paragraph 74.

75. No response is required to Paragraph 75 as it states a legal conclusion. To the extent a response to Paragraph 75 is required, Defendant denies the allegations in Paragraph 75.

76. No response is required to Paragraph 76 as it states a legal conclusion. To the extent a response to Paragraph 76 is required, Defendant denies the allegations in Paragraph 76.

**FIFTH CLAIM FOR RELIEF**
**(Recovery of Attorney's Fees Under § 276-a of the DCL)**

77. Paragraph 77 does not require a response. To the extent it does require a response, Defendant denies the allegations in Paragraph 77.

78. No response is required to Paragraph 78 as it states a legal conclusion. To the extent a response to Paragraph 78 is required, Defendant denies the allegations in Paragraph 78.

79. No response is required to Paragraph 79 as it states a legal conclusion. To the extent a response to Paragraph 79 is required, Defendant denies the allegations in Paragraph 79.

80. No response is required to Paragraph 80 as it states a legal conclusion. To the extent a response to Paragraph 80 is required, Defendant denies the allegations in Paragraph 80.

## SIXTH CLAIM FOR RELIEF
### (Recovery of Fraudulent Transfer Under 11 U.S.C. § 550)

81. Paragraph 81 does not require a response. To the extent it does require a response, Defendant denies the allegations in Paragraph 81.

82. No response is required to Paragraph 82 as it states a legal conclusion. To the extent a response to Paragraph 82 is required, Defendant denies the allegations in Paragraph 82.

83. No response is required to Paragraph 83 as it states a legal conclusion. To the extent a response to Paragraph 83 is required, Defendant denies the allegations in Paragraph 83.

84. No response is required to Paragraph 84 as it states a legal conclusion. To the extent a response to Paragraph 84 is required, Defendant denies the allegations in Paragraph 84.

## SEVENTH CLAIM FOR RELIEF
### (Disallowance of Claims Under 11 U.S.C. §§ 502(d) and (j))

85. Paragraph 85 does not require a response. To the extent it does require a response, Defendant denies the allegations in Paragraph 85.

86. No response is required to Paragraph 86 as it states a legal conclusion. To the extent a response to Paragraph 86 is required, Defendant denies the allegations in Paragraph 86.

87. No response is required to Paragraph 87 as it states a legal conclusion. To the extent a response to Paragraph 87 is required, Defendant denies the allegations in Paragraph 87.

88. No response is required to Paragraph 88 as it states a legal conclusion. To the extent a response to Paragraph 88 is required, Defendant denies the allegations in Paragraph 88.

## RESERVATION OF RIGHTS

89. Paragraph 89 does not require a response. To the extent it does require a response, Defendant reserves the right to amend her Answer and Judgement must be entered in support of the Defendant.

## AFFIRMATIVE DEFENSES

Defendants assert the following affirmative defenses. In asserting these defenses, Defendants do not assume the burden of establishing any fact or proposition where that burden is properly imposed on Plaintiff. Defendants expressly reserve the right to supplement, amend or delete any or all of the following defenses, as warranted by discovery or other investigation, or as justice may require.

### AS AND FOR A FIRST AFFIRMATIVE DEFENSE

The Complaint fails, in whole or in part, to state a claim upon which relief can be granted.

### AS AND FOR A SECOND AFFIRMATIVE DEFENSE

Plaintiff is estopped by its own inequitable conduct from asserting the claim that is at issue in the Complaint.

### AS AND FOR A THIRD AFFIRMATIVE DEFENSE

Plaintiff waived the claims that are at issue in the Complaint.

### AS AND FOR A FOURTH AFFIRMATIVE DEFENSE

Plaintiff's claim is barred, in whole or in part, by the doctrine of laches and estoppel.

### AS AND FOR A FIFTH AFFIRMATIVE DEFENSE

Plaintiff's claim is barred, in whole or in part, by the doctrine of unclean hands. Equitable subordination of Athanasios's interests (§510(c)).

### AS AND FOR A SIXTH AFFIRMATIVE DEFENSE

At all times relevant to the Complaint's allegations, Defendants acted in good faith and in reliance on the promises made express and implied, regarding any transactions between the Debtor and the Defendant.

### AS AND FOR SEVENTH AFFIRMATIVE DEFENSE

The Defendant made the Debtor whole. The Defendant assumed the contingent liabilities of the Debtor running a sum exceeding a million dollar.

### AS AND FOR AN EIGHTH AFFIRMATIVE DEFENSE

Plaintiff's claim is barred in whole or in part by its own inequitable conduct of Athanasios.

### AS AND FOR A NINTH AFFIRMATIVE DEFENSE

This Court lacks jurisdiction including subject matter jurisdiction.

### AS AND FOR A TENTH AFFIRMATIVE DEFENSE

Plaintiff's claim is barred, either in whole or in part, by its failure to mitigate.

### AS AND FOR AN ELEVENTH AFFIRMATIVE DEFENSE

Plaintiff has not suffered, and will not suffer, injury or damages as a result of any conduct by Defendant and therefore is barred from maintaining this action.

### AS AND FOR TWELTH AFFIRMATIVE DEFENSE

This action is barred by Statute of limitations.

### AS AND FOR THIRTEENTH AFFIRMATIVE DEFENSE

The Debtor remained solvent after and before any transaction complained herein and fair consideration provided to her by the Defendant.

### AS AND FOR FOURTEENTH AFFIRMATIVE DEFENSE

The Defendant provided value to the Debtor. And did not know if the Debtor acted with intent to hinder, delay or defraud.

### AS AND FOR FIFTEENTH AFFIRMATIVE DEFENSE

The Debtor was a purchaser of the shares for more than fair consideration without knowledge of the fraud at the time of purchase.

### AS AND FOR SIXTEENTH AFFIRMATIVE DEFENSE

This Proceeding is precluded by Matrimonial Proceeding.  The alleged transfer and its value were already addressed and adjudicated in the matrimonial proceedings, which resulted in a Contempt Order valuing the shares at $252,500. Once a matrimonial court has valued and allocated marital property, a subsequent fraudulent transfer action is academic. Plaintiff's attempt to recover the same value constitutes an impermissible double recovery.

## AS AND FOR SEVENTEENTH AFFIRMATIVE DEFENSE

The Contempt Order has no res judicata or collateral estoppel effect against Defendant in this proceeding, as Defendant was neither a party nor in privity with the Debtor in the Divorce Action, and thus lacked a full and fair opportunity to litigate the issues, rendering its findings non-binding for purposes of establishing fraudulent intent or avoidability under 11 U.S.C. § 544(b) and former N.Y. Debt. & Cred. Law § 276.

## AS AND FOR EIGHTEENTH AFFIRMATIVE DEFENSE

The alleged transferred interest is not property of the bankruptcy estate under 11 U.S.C. § 541(a), as the transfer was fully consummated pre-petition, leaving the Debtor with no remaining legal or equitable interest at filing, and any attempt to include it via avoidance under § 544(b) fails for lack of a qualifying triggering creditor (e.g., Sapphire) with an allowable unsecured claim under § 502 who could avoid it under applicable state law, rendering the trustee's powers non-derivative and overreaching.

## AS AND FOR NINETEENTH AFFIRMATIVE DEFENSE

The remedies or purge conditions imposed upon the Debtor in the matrimonial contempt order are not enforceable against Defendant and cannot serve as the basis for liability in this proceeding. The contempt sanctions were designed to coerce compliance with domestic relations orders, not to adjudicate fraudulent conveyance claims under the Debtor and Creditor Law. Defendant was not subject to those sanctions, did not have notice or an opportunity to contest them, and therefore cannot be bound by their terms.

## AS AND FOR TWENTIETH AFFIRMATIVE DEFENSE

The transfer is not avoidable under 11 U.S.C. § 544(b) and former N.Y. Debt. & Cred. Law §§ 273-275, as the Debtor was not insolvent or unable to pay debts as they came due at the time

of the transfer, with the transaction providing reasonably equivalent value through Defendant's assumption of significant liabilities and operational support, thereby stabilizing the Debtor's financial position rather than rendering her unable to meet obligations; proof of nonpayment must be specific to a triggering creditor's claim, which Plaintiff has not established.

### AS AND FOR TWENTY FIRST AFFIRMATIVE DEFENSE

YOYO Lip Gloss formally ceased operations in 2022, at which time it carried in excess of $1 million in outstanding debt, much of which was incurred in an effort to sustain the company's operations. Defendant Evangelia Andreone never drew a salary from the business and devoted years of continuous, uncompensated labor to ensuring that the company's debts were paid and its credibility with lenders, vendors, and creditors preserved. She committed personal resources, including capital from her other business ventures, in an attempt to meet obligations and avert further deterioration of the company's standing.

### AS AND FOR TWENTY FIRST AFFIRMATIVE DEFENSE
#### *Colorado River* abstention

The bankruptcy court must abstain as "substantially the same parties are contemporaneously litigating substantially the same issue in another forum."  Moreover, the state proceeding is and has presented the possibility of a comprehensive disposition of litigation. For reasons including that (1)The state court assumed jurisdiction over the property; (2) the inconvenience of the federal forum; (3) the desirability of avoiding piecemeal litigation; and (4) the order in which the concurrent forums obtained jurisdiction," makes this court an improper forum.  This issue has been resolved as a ownership interest in the state court and the state court continues to officiate on equitable distribution. It does not translate Athansios interest into a creditor's interest amenable to NYFCA.

WHEREFORE, the Defendant respectfully request that the Court dismiss the complaint with prejudice, with costs and disbursements to the Defendant, and seek such other legal and equitable relief, including an award of attorney's fees, as the Court may deem just and proper.

**Pursuant to Federal Rules of Procedure 38(FRBP 9015), the Plaintiff Debtor demands a trial by jury in this action of all issues so triable. And she makes the demand to be heard by an article III judge for all phases of this litigation.**

Dated: August 29, 2025
New York New York                                    **Respectfully Submitted,**
                                                                   **DAHIYA LAW OFFICES, LLC**

_/S/karamvirdahiya_
**Karamvir Dahiya**
*Counsel for the Plaintiff*

**75 MAIDEN LANE SUITE 606**
**NEW YORK NEW YORK 10038**
**TEL: 212 766 8000**