**UNITED STATES BANKRUPTCY COURT**
**EASTERN DISTRICT OF NEW YORK**
- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - X

In re:                                                          Chapter 7

**MARGARITA ONASSIS PARLIONAS,**                **Case No.: 23-42029-jmm**
*aka* **MARGARITA MARY VEKRAKOS,**


                                   **Debtor.**
- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - -X

**DEBRA KRAMER, Solely as**                     **Adv. Proc. No.: 25-01022jmm**
**Chapter 7 Trustee for the Estate of**
**MARGARITA ONASSIS PARLIONAS**
*aka* **MARGARITA MARY VEKRAKOS,**


                                   **Plaintiff,**

 **-against- EVANGELIA ANDREONE**
 *aka* **EVANGELIA PARLIONAS,**


                                   **Defendant.**
- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - -X

**DEFENDANT EVANGELIA ANDREONE'S OPPOSITION TO PLAINTIFF'S MOTION**
**TO QUASH NOTICE OF DEPOSITION OF PLAINTIFF DEBRA KRAMER AS TRUSTE**

Defendant Evangelia Andreone aka Evangelia Parlionas ("Defendant"), by and through her
undersigned counsel, respectfully opposes Plaintiff Debra Kramer's ("Plaintiff" or "Trustee")
Motion to Quash Defendant's Notice of Deposition of Plaintiff Debra Kramer (the "Motion") [ECF
No. 13], dated November 16, 2025 and in support thereof, states as follows:

**PRELIMINARY STATEMENT**

This adversary proceeding arises from Plaintiff's attempt to avoid and recover an alleged
fraudulent transfer of a 25% equity interest in YOYO Lip Gloss, Inc. ("YOYO"), a now-defunct
business, from the Debtor to Defendant during the pendency of the Debtor's matrimonial action
against Athanasios Parlionas. Defendant, the Debtor's daughter, accepted the transfer in good faith
to relieve the Debtor of substantial personal guarantees, operational burdens, and financial
exposure amid YOYO's deteriorating performance—not to hinder, delay, or defraud creditors. As
detailed in Defendant's Amended Answer [ECF No. 10], the transfer was supported by reasonably

1

equivalent value, occurred while the Debtor was solvent, and does not implicate the Uniform Fraudulent Conveyance Act ("UFCA") or Bankruptcy Code avoidance powers.

Discovery in this matter has been contentious but productive. On October 28, 2025 late night, Defendant served comprehensive discovery demands, including Plaintiff's First Set of Requests for Admission ("RFAs"), interrogatories, document requests, and a Notice of Deposition upon Oral Examination of Plaintiff (the "Deposition Notice"). In response, Plaintiff now moves to quash the Deposition Notice, primarily arguing that Defendant's responses to the RFAs (served on November 12, 2025 late night around 2:19 AM, i.e. November 13, 2025) were untimely and that the deposition would unduly burden Plaintiff or fall outside the discovery cutoff.

These arguments lack merit. *First*, Defendant's RFA responses were timely served in full compliance with Fed. R. Civ. P. 36(a)(3) and the Court's Scheduling Order [ECF No. 8], or, at minimum, any nominal delay is excusable under the circumstances, including Defendant's pending motion for extension of time (the "Extension Motion") [ECF No. 12, filed Oct. 29, 2025] and the absence of prejudice to Plaintiff. *Second,* the deposition of Plaintiff—the sole Chapter 7 Trustee with unique, non-replicable knowledge of the estate's claims, the Debtor's finances, and the basis for the alleged $252,500 valuation—is critical to Defendant's defenses and cannot be obtained through less burdensome means. Quashing the deposition would reward Plaintiff's gamesmanship while denying Defendant her right to probe the Trustee's *subjective assessments* under Fed. R. Civ. P. 30 and 26(b)(1). This probes the trustee's mental impressions, evaluations, and judgments, crucial in bankruptcy or trust cases where the trustee's duties and decisions are central

The Court should deny the Motion in its entirety and direct that the deposition proceed forthwith, subject to the Extension Motion's resolution.

## FACTUAL BACKGROUND

1. **Procedural History.** Plaintiff commenced this adversary proceeding on March 8, 2025 [ECF No. 1], alleging constructive and actual fraudulent transfer claims under New York Debtor and Creditor Law ("NY DCL") §§ 273–276 (incorporated via 11 U.S.C. § 544) and seeking recovery of an imputed $252,500 value for the YOYO interest. Defendant filed her Amended Answer on [insert date, e.g., August, 29 2025] [ECF No. 10], denying the claims and asserting affirmative defenses, including fair consideration via relief from personal guarantees and solvency.

2. **Scheduling Order and Discovery Conduct.** On August 26, 2025, the Court entered a Scheduling Order [ECF No. 8] setting a fact and expert discovery cutoff of November 21, 2025, but expressly providing that "the deadline set forth herein may be extended by further order of the Court." The Order further directed the parties to confer on a Joint Discovery Control Plan by September 4, 2025, following a conference on August 28, 2025. Despite good-faith efforts seeking extension of time, Defendant's request for extension of time, was summarily denied by the Trustee's counsel and clearly it is difficult to complete the discovery with its ESI protocols and third-party subpoenas essential to this fact-intensive case (e.g., YOYO corporate records from 2015–present, Debtor's financials from 2017–2019, and the full Queens County divorce file exceeding 400 NYSCEF entries). On October 28, 2025—nearly a month before the cutoff— Defendant served her discovery demands, including:

   - 25 detailed interrogatories;

   - Over 20 document categories with ESI/keyword search protocols;

   - Requests for Admission (the "RFAs"); and

   - The Deposition Notice, scheduling Plaintiff's deposition for December 10, 2025 (post-cutoff, pending extension).

These demands directly target the Complaint's core allegations, including the YOYO valuation, Debtor's solvency, and badges of fraud.

3. **Defendant's Extension Motion.** On October 29, 2025—the day after serving discovery— Defendant filed the Extension Motion [ECF No. 12 ], seeking a modest 45-day extension to January 5, 2026, due to the case's complexity (e.g., third-party records from YOYO, Chase Sapphire, and the divorce action), Plaintiff's anticipated responses due November 27, 2025 (six days after the cutoff, precluding follow-up), and undersigned counsel's unforeseen office relocation by December 31, 2025 as a solo practitioner without support staff. The Extension Motion emphasized no prejudice to Plaintiff or the Court, no trial date, and Defendant's view that the claims are meritless but require thorough discovery to defend. Plaintiff was served via ECF and has not opposed, though it being a Letter Motion.

4. **RFA Service and Responses**. Plaintiff's RFAs were served on Defendant on October 10, 2025 at 5:21 PM. Defendant served her Responses and Objections to Plaintiff's First Set of Requests for

Admission (the "RFA Responses") [attached as Exhibit A] on November 13, 2025,[1] at 2:19 AM EST—which I thought was within hours of the discovery cutoff [which I had miscalculated, as the discovery was due by Monday November 10, 2025 to be within the 30-day response period under Fed. R. Civ. P. 36(a)(3)). The RFA Responses admit undisputed facts (e.g., the Debtor's bankruptcy filing and Defendant's familial relation), deny key allegations (e.g., the Debtor's alleged 42.88% YOYO interest), and include proper objections to legal conclusions (e.g., "insider" status under 11 U.S.C. § 101(31)). Plaintiff rejected the RFA Responses via email on November 22, 2025, claiming untimeliness without specifying deficiencies or prejudice.

5. **Deposition Notice and Motion to Quash.** The Deposition Notice seeks to depose Plaintiff, the Chapter 7 Trustee, on topics including: (i) the basis for the $252,500 YOYO valuation; (ii) the Debtor's solvency analysis; (iii) communications with Athanasios Parlionas or divorce counsel; and (iv) estate administration. Plaintiff filed the Motion to Quash on November 16, 2025, arguing untimeliness of RFA Responses, undue burden, and expiration of discovery.

**LEGAL STANDARD**

Fed. R. Civ. P. 30(a)(1), made applicable by Fed. R. Bankr. P. 7030, permits a party to depose any person, including a party opponent, absent a court order or stipulation. Courts quash deposition notices under Fed. R. Civ. P. 45(d)(3)(A) (subpoena context) or inherent authority only for undue burden, harassment, or clear irrelevance—not mere delay. Courts routinely deny quashing where deposition sought unique knowledge. Protective orders under Rule 26(c) require a showing of "good cause," balancing relevance, burden, and prejudice. Fed. R. Civ. P. 26(b)(1) (discovery proportional to needs of case). Extensions of discovery deadlines are liberally granted absent bad faith or prejudice. See*; Lever Your Business, Inc. v. Sacred Hoops and Hardwood, Inc*., 2021 WL 243308, at *5 (C.D. Cal. 2021) (excusing nine-day delay in serving interrogatory

---

[1] Under Fed. R. Civ. P. 36(a)(3), made applicable here by Fed. R. Bankr. P. 7036, a party must serve written answers or objections to requests for admission within 30 days after being served. The computation of this period is governed by Fed. R. Civ. P. 6(a)(1), which excludes the day of service (October 10, 2025) and counts every subsequent day, including weekends and holidays, up to and including the last day—unless the last day falls on a Saturday, Sunday, or legal holiday, in which case the period runs until the end of the next day that is not one of those days. October 11, 2025 was the first day, 30th day happened to be on November 9, 2025 which was a Sunday.  November 10, 2025 being the responsive day, thus the responses was two days late.

responses due to party's technical difficulties); *Schooler v. Wal-Mart Stores, Inc.*, 2015 WL 4879434, at *3 (E.D. La. 2015) (although defendant's objections related the privacy interests of non-parties were untimely, the court did not deem them waived because they "are of such an important nature"). See also, *Pawlaczyk v. Besser Credit Union*, 2014 I.E.R. Cas. (BNA) 170891, 2014 WL 5425576, at *7 (E.D. Mich. 2014) (granting extension of interrogatory deadline as "there is flexibility built into the rule that allows courts to achieve the goal of efficient and complete discovery" and parties "attempt[ed] to comply with all outstanding discovery issues and provide all necessary responses and documents").

Also, the factual issues here are complex--denser the facts, more intense is the discovery demand.  Indeed,

> Rule 1 of the Federal Rules of Civil Procedure requires the Court and the parties to construe, administer, and employ the Federal Rules "to secure the just, speedy, and inexpensive determination of every action and proceeding." Fed. R. Civ. P. 1. What is just, speedy and inexpensive varies by case. It goes without saying that complex civil litigation, such as this action, involves extensive discovery and thus requires a longer period of time to complete discovery with greater litigation costs than the typical civil case. Trial courts have broad authority to oversee and fashion discovery as appropriate for each case. *See United States v. Williams*, No. 02-CR-01372 (ALC), 2017 WL 3613661, at *2 (S.D.N.Y. Aug. 21, 2017) (internal citation and quotation marks omitted); *Williams v. Rosenblatt Securities, Inc.*, 236 F.Supp.3d 802, 803 (S.D.N.Y. 2017) (recognizing broad discretion of magistrate judges in resolving discovery disputes); Manual for Complex Litigation (Fourth) § 11.422 (2004) (court's broad authority to oversee and control discovery includes authority to impose time limitations, restrict the scope and quantity of discovery, and order sequencing of discovery). Rule 26(b)(2)(C) also authorizes the court to limit the frequency or extent of discovery "if the party seeking discovery has had ample time to obtain information by discovery in the action." Fed. R. Civ. P. 26(b)(2)(C).

*City of Almaty, Kazahkstan v. Ablyazov, No*. 15–CV–05345 (AJN) (KHP), 2018 WL 2148430, at *1 (S.D.N.Y. May 10, 2018). Here the records, third parties involvement, and other layers adds to the complications, thus warranting extension of time in interest of justice.

# ARGUMENT

## I. DEFENDANT'S RESPONSES TO THE RFAS WERE TIMELY SERVED, OR ANY DELAY IS EXCUSABLE, AND DO NOT WARRANT QUASHING THE DEPOSITION NOTICE.

Plaintiff's primary ground for quashing—Defendant's alleged failure to timely respond to the RFAs—is baseless and a red herring. The Court should reject this argument and focus on the deposition's merits.

### A. The RFA Responses saw a delay of only two days and thus can be deemed to be timely Under Rule 36(a)(3) and the Scheduling Order.

Fed. R. Civ. P. 36(a)(3) requires responses within 30 days of service, unless the request specifies otherwise or the court/stipulation extends. The Scheduling Order [ECF No. 8] set an overall discovery cutoff of November 21, 2025. November 13, 2025 at 2:19 AM, we served our response to the RFA, which should have been by November 10, 2025. There was a miscalculation of time by the undersigned and added 3 days for service, which I believe is no more available if the service is by electronic means.  Plaintiff's email rejection cited too late, despite request for extension. This hyper-technical objection ignores the parties' ongoing conferral obligations under Fed. R. Civ. P. 26(f) and the Extension Motion, filed pre-cutoff, which preserved all discovery rights.

### B. Any Nominal Delay Is Excusable Under Rule 36(a)(5) and Does Not Prejudice Plaintiff.

Even assuming arguendo a two-day delay (e.g., due to miscalculation etc.), Rule 36(a)(5) permits withdrawal or amendment of deemed admissions "on motion" if it "would promote the presentation of the merits" and causes "no prejudice." Here:

**Presentation of Merits**: The RFA Responses directly engage the merits, admitting neutral facts (e.g., Requests Nos. 1–3, 6–8) while denying Plaintiff's inflammatory claims (e.g., Request No. 9: Debtor's YOYO interest was 25%, not 42.88%). Quashing based on untimeliness would deem these denials admitted, rewarding form over substance in a case turning on valuation and intent. See *Black Hills Molding, Inc. v. Brandom Holdings*, LLC, 295 F.R.D. 403 (2013) (holding untimely responses may be allowed when they promote representation of merits and do not prejudice the requesting party). Thus, "because the district court has the power to allow a longer time [for a response] ... the court, in its discretion, may permit the filing of an answer that would otherwise be untimely." *Gutting v. Falstaff Brewing Corp.,* 710 F.2d 1309, 1313 (8th Cir.1983) (citing *Moosman v. Joseph P. Blitz* Inc., 358 F.2d 686, 688 (2d Cir.1966).

6

- **No Prejudice if it is a search for Truth**: Plaintiff identifies none—e.g., no delayed trial, no wasted resources, no inability to use admissions in motion practice. Discovery remains open pending the Extension Letter Motion. In *American Petro, Inc. v. Shurtleff* 159 F.R.D. 35 (1994)), the court noted that Rule 36 is designed to remove uncontested issues and prevent delay, and that there is no reason to refuse a late filing when the issues are contested and the late response does not cause delay or prejudice. See also, *Herrin v. Blackman*, 89 F.R.D. 622 (1981)). Similarly, in *White Consol. Industries, Inc. v. Waterhouse,* the court allowed late responses because they mirrored statements in the defendant's answer, did not prejudice the plaintiff, and promoted the search for truth. *White Consol. Industries, Inc. v. Waterhouse,* 158 F.R.D. 429 (1994).

**Good Cause for Delay**: As a solo practitioner relocating office amid multiple matters, undersigned counsel faced logistical hurdles (detailed in Extension Motion), yet prioritized service. Courts excuse such delays in bankruptcy's informal discovery regime favoring merits over "nitpicking".

Overall, courts have routinely allowed late filed RFAs. This Court has the discretion to permit a late response to requests for admissions and its should be exercised here as it is necessary to relieve a party from default by the use of the admissions to obtain a summary or default judgment. *In re Heritage Bond Litigation*, 220 F.R.D. 624, 626 (C.D. Cal. 2004). Also, the Plaintiff's counsel impermissibly draws a conclusion that the defaulting Defendant has ratified the legal conclusions as mentioned in their RFAs. Rule 36 is best considered not as a traditional discovery device, but rather as a "'' procedure for obtaining admissions for the record of facts already known' [internal citation omitted]. 'It would be inappropriate for a party to demand that the opposing party ratify legal conclusions that the requesting party has simply attached to operative facts' [internal citation omitted].'" *McCarthy v. Darman,* 2008 U.S. Dist. LEXIS 47549, at *2 (E.D. Pa. June 16, 2008).

There is no substantial delay or prejudice to the Plaintiff, the Court can exercise its discretion. "A court may permit a party to file answers after the expiration of the 30–day period, 'where the delay was not caused by any lack of good faith and the untimely response will not unduly prejudice the requesting party.'" *In re Schwinn Bicycle Co.,* 190 B.R. 599, 617 (Bankr. N.D. Ill. 1995) (quoting 4 James W. Moore et al., *Moore's Federal Practice,* § 36.05(4), nn. 4 & 5.)

Plaintiff's rejection smacks of gamesmanship, as the RFAs seek admissions on peripheral facts (e.g., divorce commencement date) while probing legal conclusions (objection properly preserved). The Court should deem the RFA Responses timely, overrule objections, and deny quash on this ground.

## II. THE DEPOSITION OF PLAINTIFF IS RELEVANT, PROPORTIONAL, AND NOT UNDULY BURDENSOME.

Trustee asserts, she cannot be examined. But she can bring a lawsuit, "sued and be sued," 11 U.S.C. § 323. She can open proceedings against anyone, yet she asserts she cannot be examined. She controls hiring and firing of her professionals including lawyers, 11 U.S.C. 327.   The trustee can discontinue a professional's services at any time if it's in the estate's best interest (e.g., due to poor performance, cost concerns, or changed circumstances). She decides issues of estates and supervises them, 28 C.F.R. § 58.6(a)(7)).  She calls the shots. She sues yet claims exemption to deposition notice under FRBP 7030.   There is nothing special about a bankruptcy trustee, nor there is any exception to the absolute rule provided for deposition of parties. Also, the bankruptcy trustee is not governmental entity, as is clear from several cases. Even the governmental entities are subject to deposition if they are a party to the lawsuit.   "Like any ordinary litigant, the Government must abide by the Federal Rules of Civil Procedure. It is not entitled to special consideration concerning the scope of discovery, especially when it voluntarily initiates an action." *SEC v. Collins & Aikman Corp.,* 256 F.R.D. 403, 414 (S.D.N.Y.2009), indeed, [w]hen a government agency initiates litigation, it must be prepared to follow the same discovery rules that govern private parties (albeit with the benefit of additional privileges such as deliberative process and state secrets)." *Id.* at 418.  See also, *SEC v. Kramer,* 778 F.Supp.2d 1320, 1327 (M.D.Fla.2011) (noting that the Rule "provides [the SEC] neither an exemption from Rule 30(b)(6) nor 'special consideration concerning the scope of discovery' ") (quoting *SEC v. Collins & Aikman Corp*., 256 F.R.D. 403 at 414). Indeed, the Kramer Court underscored the importance of examination,

> "It is very unusual for a court to prohibit the taking of a deposition altogether and absent extraordinary circumstances, such an order would likely be in error." *Salter v. Upjohn Co.,* 593 F.2d 649, 651 (5th Cir.1979).[8] A party typically faces much greater difficulty establishing a basis for prohibiting a deposition, because "the need for protection usually cannot be determined before the examination begins, and a motion can be made

if any need for protection emerges during the course of the examination." CHARLES ALAN WRIGHT, ARTHUR R. MILLER, MARY KAY KANE, RICHARD L. MARCUS, 8A FEDERAL PRACTICE & PROCEDURE § 2037 (3d ed.); *S.E.C. v. Dowdell,* 2002 WL 1969664, *2 (W.D.Va.2002). Furthermore, "the deposition-discovery rules are to be accorded a broad and liberal treatment. No longer can the time-honored cry of 'fishing expedition' serve to preclude a party from inquiring into the facts underlying his opponent's case." *Hickman v. Taylor,* 329 U.S. 495, 507, 67 S.Ct. 385, 91 L.Ed. 451 (1947) (stating that "[m]utual knowledge of all the relevant facts gathered by both parties is essential to proper litigation."). If, however, "the examination is being conducted in bad faith or in such a manner as to annoy, embarrass[,] or oppress the person subject to the inquiry," a limitation arises. 329 U.S. at 507–08, 67 S.Ct. 385. "[F]urther limitations come into existence when the inquiry touches upon the irrelevant or encroaches upon the recognized domains of privilege." 329 U.S. at 507–08, 67 S.Ct. 385.

*S.E.C. v. Kramer, 778* F. Supp. 2d 1320, 1327–28 (M.D. Fla. 2011).  Thus, there is no merit in the contention that the Chapter 7 Trustee as trustee-plaintiff cannot be examined.  Further, the following reasons permit the examination of the trustee.

The Trustee's reliance on *In re Varela*, 530 B.R. 573 (Bankr. E.D.N.Y. 2015), to quash Defendant's Notice of Deposition of the Trustee (the "Deposition Notice") is misplaced and unavailing. While *Varela* addresses a narrow circumstance in which a bankruptcy court properly barred the deposition of a Chapter 7 trustee, the factual, procedural, and legal context of that decision is materially distinguishable from the instant fraudulent transfer avoidance proceeding. As detailed below, *Varela* does not support quashing the Deposition Notice here, where the Trustee—as the named Plaintiff—possesses unique, non-replicable knowledge central to the core disputed issues, including the alleged $252,500 valuation of the transferred YOYO interest, the Debtor's solvency at the time of transfer, and the badges of fraud. Permitting the deposition is not only appropriate under Fed. R. Civ. P. 30(a)(1) and 26(b)(1) (applicable via Fed. R. Bankr. P. 7030 and 7026), but essential to ensuring proportional discovery and a fair adjudication on the merits.

This analysis proceeds in three parts: (1) a brief overview of *Varela*'s holdings and rationale; (2) key factual and procedural distinctions rendering *Varela* inapposite; and (3) affirmative legal reasons why the Trustee's deposition must proceed in this case.

## I. Overview of *Varela*'s Holdings and Rationale

In *Varela*, the Chapter 7 trustee (Pergament) commenced an adversary proceeding under 11 U.S.C. § 727(a)(4)(A) to object to the debtor's discharge, alleging false oaths in her schedules. 530 B.R. at 576. The debtor filed a second amended answer asserting four counterclaims against the trustee *personally* (e.g., removal under § 324(a), tortious interference with mortgage modification, bad faith/fraud, and abuse of process) and four affirmative defenses (e.g., failure to state a claim, trustee exceeded authority, lack of entitlement to post-petition payments, and lack of standing). *Id.* at 576–77. These counterclaims and defenses stemmed from the debtor's allegations that the trustee wrongfully demanded post-petition mortgage-equivalent payments during her loan modification efforts and filed the § 727 action in retaliation for her refusal. *Id.*   The trustee moved to dismiss the counterclaims under Fed. R. Civ. P. 12(b)(6) (applicable via Fed. R. Bankr. P. 7012) and to strike the affirmative defenses under Fed. R. Civ. P. 12(f) (applicable via Fed. R. Bankr. P. 7012). The debtor noticed the trustee's deposition in support of her counterclaims. *Id.* at 577. Judge Grossman granted the motions in substantial part:

- **Counterclaims Dismissed**: The court dismissed the removal counterclaim because it was improperly brought as a counterclaim rather than a motion under Fed. R. Bankr. P. 9014, and the alleged harms (personal injury to the debtor, not the estate) did not rise to the "fraud or actual injury to the estate" standard under Second Circuit precedent (e.g., *In re Nuñez*, 512 F.3d 91, 100 (2d Cir. 2008)). *Id.* at 577–79. The remaining counterclaims (2–4) failed the "opposing party" requirement of Fed. R. Civ. P. 13 (applicable via Fed. R. Bankr. P. 7013) because they targeted the trustee *personally*, not in his official capacity as plaintiff. *Id.* at 579–80. Even if refiled separately, quasi-judicial immunity would bar personal liability, as the trustee's actions (objecting to discharge and marshaling assets) fell within his statutory duties under 11 U.S.C. §§ 704(a)(1), (4). *Id.* at 580–82.
- **Affirmative Defenses Stricken**: The court denied the motion as to the "failure to state a claim" defense (redundant but harmless general denial) but struck the others as legally insufficient or irrelevant to the § 727 claim (e.g., no connection to false oath allegations; would complicate discovery without merit). *Id.* at 582–83.
- **Protective Order Granting Quashing**: *Critically*, the court then granted the trustee's motion for a protective order under Fed. R. Civ. P. 26(c) (applicable via Fed. R. Bankr. P.

7026) barring the debtor from deposing the trustee. The rationale was succinct: With all counterclaims dismissed and substantive affirmative defenses stricken, "a deposition of the Trustee is not reasonably calculated to lead to discoverable evidence relevant to the remaining issues in this adversary proceeding." *Id.* at 583. The deposition was tied solely to the now-defunct counterclaims alleging personal misconduct; it had no bearing on the surviving § 727 false oath claim. *Id.* The court emphasized that the debtor retained recourse via the United States Trustee for any ethical complaints against the panel trustee. *Id.* at 582.

In sum, *Varela* stands for the unremarkable proposition that, *after* dispositive motions have eliminated all claims or defenses implicating a trustee's conduct, a deposition seeking discovery into those eliminated issues is irrelevant and unduly burdensome under Rule 26(b)(1). It does *not* create a blanket immunity from deposition for trustees in their official capacity as parties.

## II. Key Factual and Procedural Distinctions Rendering *Varela* Inapposite

*Varela* is factually and procedurally worlds apart from this adversary proceeding, such that its holding cannot justify quashing the Deposition Notice. The distinctions are stark and dispositive:

1. **Nature of the Underlying Claims and Proceeding**:
    i.   *Varela* involved a § 727(a)(4)(A) objection to discharge—a statutory duty of the trustee under § 704(a)(4) to investigate and oppose if warranted—focused narrowly on the debtor's alleged false oaths. 530 B.R. at 576. The counterclaims/deposition targeted the trustee's *personal* motives and collateral conduct (e.g., payment demands during loan modification), which the court deemed extraneous to the § 727 merits. *Id.* at 582–83.
    ii.  Here, this is a fraudulent transfer avoidance action under 11 U.S.C. § 544(b) (borrowing New York Debtor and Creditor Law §§ 273–276), where the *Trustee is the Plaintiff* asserting affirmative claims for recovery of the YOYO interest's value. Unlike *Varela*'s defensive § 727 objection, the Trustee's Complaint alleges specific, fact-intensive elements: the transfer's timing/value during matrimonial proceedings, Debtor's insolvency, lack of fair consideration, and badges of actual fraud (e.g., insider transfer to Defendant, concealment). [Compl. ¶¶ 1–5, ECF No.

1]. The Trustee's subjective knowledge—e.g., basis for the $252,500 valuation, solvency calculations, reliance on Athanasios Parlionas's inputs, and investigation of "badges"—is *inherently central* to proving these elements. Defendant's Amended Answer directly disputes them (e.g., fair consideration via relief from guarantees, ongoing solvency). [Am. Answer ¶¶ 1–3]. A § 544 plaintiff-trustee's deposition is routine to test such claims, not collateral retaliation.

2. **Absence of Counterclaims or Personal Attacks on the Trustee**:

   i. The *Varela* deposition was sought to support counterclaims alleging the trustee's *personal* torts and removal—claims the court dismissed pre-deposition for procedural and immunity reasons. 530 B.R. at 577–80. Without live counterclaims, the deposition lacked any relevance. *Id.* at 583.

   ii. Defendant asserts *no counterclaims* here, personal or otherwise. The Deposition Notice targets discovery on the *Complaint's merits* (e.g., valuation methodology, solvency evidence), not trustee misconduct. This is standard party-opponent discovery under Rule 30(a)(1), not a fishing expedition into dismissed personal claims. Quasi-judicial immunity (discussed extensively in *Varela*, 530 B.R. at 580–82) is irrelevant, as Defendant seeks no personal relief against the Trustee. There is a distinction between immunity and discovery obligations in official capacity. It is clear that qualified and other personal immunities are defenses only to individual-capacity claims and are unavailable in official-capacity actions, which are treated as suits against the entity; they do not create any freestanding immunity from ordinary discovery directed to the governmental party.

3. **Procedural Posture: Pre-Discovery vs. Post-Dispositive Rulings**:

   i. *Varela* quashed the deposition *after* granting motions to dismiss counterclaims and strike defenses, narrowing the case to undisputed § 727 issues. 530 B.R. at 583. At that advanced stage, the deposition could only prolong irrelevant disputes.This case is in the *early discovery phase*: The Scheduling Order sets November 21, 2025, as the cutoff [ECF No. 8], Defendant's Extension Letter Motion (filed October 29, 2025) remains pending and unopposed [ECF No. 12], and no motions to dismiss or strike have been filed or granted. Defendant served the Deposition Notice on October 28, 2025—nearly a month before the cutoff—alongside RFAs, interrogatories, and document requests, all probing the Complaint's allegations.

[See Extension Mot. at 2]. Quashing now would prematurely truncate discovery, contrary to the liberal standards of Rules 26 and 30. Extensions and discovery is liberally granted absent prejudice.

4. **Relevance and Proportionality of the Deposition**:

    i. In *Varela*, the court found the deposition irrelevant post-narrowing: "not reasonably calculated to lead to discoverable evidence relevant to the remaining issues." 530 B.R. at 583.

    ii. Here, the Trustee's testimony is *highly relevant and proportional* under Rule 26(b)(1): As the sole investigator of the estate, she holds irreplaceable knowledge of the $252,500 valuation (unsupported in the Complaint), solvency balance sheets, creditor communications (e.g., Chase Sapphire), and why the transfer allegedly impaired Athanasios's rights despite state-court allocation. [Dep. Not. Topics, served Oct. 28, 2025]. These go to the heart of Defendant's defenses (e.g., reasonably equivalent value via guarantee relief; no insolvency).

## III. Affirmative Reasons the Deposition Must Proceed, Untethered to *Varela*

Even setting *Varela* aside, the Trustee's quash motion fails on the merits. Rule 30(a)(1) presumptively allows deposing a party opponent like the Trustee, shiftable only by "good cause" under Rule 26(c), *Cooper v. Welch Foods, Inc.,* 105 F.R.D. 4, 6 (W.D.N.Y. 1984). The Trustee shows none:

- **No Immunity from Official-Capacity Discovery**: Trustees enjoy quasi-judicial immunity from *damages* for discretionary acts within authority (*Varela*, 530 B.R. at 580–81 (citing *Weber v. McDonald*, No. 08-CV-4564, 2010 WL 3835889, at *4 (E.D.N.Y. Sept. 27, 2010))), but this does *not* shield testimony as a party and especially no protection for party with "institutional knowledge.". The Trustee sues "solely as Chapter 7 Trustee" [Compl. at 1], invoking Rule 30's party-deposition mechanism.

- **Pending Extension Motion Preserves Discovery**: The unopposed Extension Letter Motion supplies good cause for post-cutoff deposition (complexity, third-party records, counsel relocation). The Scheduling Order expressly allows extensions. [ECF No. 8]. Quashing pending ruling prejudices Defendant.

- **RFA "Untimeliness" Is a Red Herring, As Previously Argued**: Even if the Trustee ties *Varela* to deemed admissions from late RFAs, Defendant's tardiness by two days is not prejudicial.

In conclusion, *Varela*—a post-dispositive ruling quashing a deposition tied to dismissed personal counterclaims in a § 727 case—has no application to this live § 544 proceeding's merits-focused, early-stage discovery. The Court should deny quashing deem RFAs timely, grant the Extension Motion, and permit the deposition to proceed. Besides the foregoing, the following shows that the discovery demand is proper. Absent the RFA red herring, the Motion fails on the merits. Rule 30 presumes party depositions allowable unless "good cause" shown for protection.  Plaintiff cannot meet this burden as is clear for the following reasons:

**A. Relevance and Proportionality Under Rule 26(b)(1).**

The topics in the Deposition Notice are core to Defendant's defenses:

**Valuation ($252,500 Claim):** Plaintiff alleges this as the transfer's value but provides no methodology in the Complaint. As Trustee, Plaintiff has unique knowledge of appraisals, comparable sales, or DCF analyses—essential to rebut under NY DCL § 272 (fair consideration) and § 273 (insolvency).

**Solvency and Intent**: Plaintiff must prove Debtor's insolvency at transfer (NY DCL § 273) and actual fraud badges (e.g., insider transfer, concealment; § 276). Only Plaintiff can testify to estate investigations, creditor communications (e.g., *Sapphire*), and why the transfer "impaired" Athanasios's rights despite state-court allocation.

**Estate Administration:** Topics probe Plaintiff's conflicts (e.g., reliance on Athanasios, a creditor) and failure to pursue other assets, supporting Defendant's double-recovery defense.

These are proportional: The case involves discrete assets (YOYO interest), limited parties, and no novel law. A 3–4 hour deposition (as limited in the Notice) imposes minimal burden compared to Defendant's need to test Plaintiff's "solely as Trustee" claims. See Fed. R. Civ. P. 26(b)(1) (2020 amendments emphasizing proportionality)._

**B. No Undue Burden or Harassment.**

Plaintiff's burden claims are speculative: As Trustee, she routinely defends her actions in avoidance litigation (thus, no burden for party with "institutional knowledge") and is with minimize travel (from Huntington, NY).

The post-cutoff date (December 10, 2025) aligns with the pending Extension Motion, which Plaintiff has not opposed. If granted, discovery reopens; if denied, Defendant withdraws the Notice without prejudice. Quashing now prejudices Defendant, denying irreplaceable testimony.

**C. The Extension Motion Further Undermines the Motion to Quash.**

The Scheduling Order [ECF No. 8] invites extensions, and Defendant's timely-filed Extension Letter Motion supplies good cause (complexity, third-party records, counsel's relocation). Plaintiff's silence on the Extension Motion waives opposition. See Local Bankr. R. 9006-1 (extensions liberally granted). The Court should consolidate: Grant the Extension Motion and permit the deposition, or deny quashing pending ruling.

CONCLUSION

For the foregoing reasons, Defendant respectfully requests that the Court deny Plaintiff's Motion to Quash in its entirety, deem the RFA Responses timely, grant the Extension Motion, and other relief warranted.

Dated: December 7, 2025
New York NY 10038

Respectfully submitted,
/s/ *Karamvir Dahiya*
Karamvir Dahiya, Esq.
Dahiya Law Offices LLC
75 Maiden Lane, Suite 606
New York, NY 10038
(212) 766-8000
karam@dahiya.law
Attorneys for Defendant

**Exhibit A: Defendant's Responses and Objections to Plaintiff's First Set of Requests for Admission.**

**UNITED STATES BANKRUPTCY COURT**
**EASTERN DISTRICT OF NEW YORK**
------------------------------------------------------------X         Case No.: 23-42029-jmm
In re:

**MARGARITA ONASSIS PARLIONAS,**
**aka MARGARITA MARY VEKRAKOS,**

                                        **Debtor.**

------------------------------------------------------------X         Adv. Proc. No.: 25-01022-jmm
**DEBRA KRAMER, Solely as**
**Chapter 7 Trustee for the Estate of**
**MARGARITA ONASSIS PARLIONAS**
**aka MARGARITA MARY VEKRAKOS,**

                                        **Plaintiff,**

**-against-**

**EVANGELIA ANDREONE**
**aka EVANGELIA PARLIONAS,**

                                        **Defendant.**
------------------------------------------------------------X

### DEFENDANT EVANGELIA ANDREONE'S RESPONSES AND OBJECTIONS TO PLAINTIFF'S FIRST SET OF REQUESTS FOR ADMISSION

Defendant Evangelia Andreone aka Evangelia Parlionas (the "Defendant"), by and through her undersigned counsel, pursuant to Fed. R. Civ. P. 36, made applicable herein by Fed. R. Bankr. P. 7036, hereby responds to Plaintiff's First Set of Requests for Admission (the "Requests") as follows:

**GENERAL OBJECTIONS**

1. Defendant objects to the Requests to the extent they seek admissions concerning legal conclusions rather than facts.
2. Defendant objects to the Requests to the extent they mischaracterize prior orders, corporate records, or financial documents.
3. Defendant reserves the right to supplement or amend these responses pursuant to Fed. R. Civ. P. 26(e).

These General Objections are incorporated into each response below.

**RESPONSES TO REQUESTS FOR ADMISSION**

**Request No. 1:** Admit that the Debtor filed a voluntary petition for relief under Chapter 11 of the Bankruptcy Code on June 7, 2023.

    **Response**: Admit.

**Request No. 2:**  Admit that on March 18, 2024, the Court entered an order converting the Debtor's Chapter 11 case to one under Chapter 7 of the Bankruptcy Code.

    **Response:** Admit.

**Request No. 3:** Admit that the Defendant is the Debtor's daughter.

    **Response**: Admit.

**Request No. 4**: Admit that the Defendant is an "insider" of the Debtor as that term is defined in section 101(31) of the Bankruptcy Code.

    **Response**: Defendant objects that this request improperly seeks the admission of a pure question of law

**Request No. 5:** Admit that on or about October 21, 2015, the Debtor commenced a divorce action titled Margarita Parlionas v. Athanasios Parlionas, in the Supreme Court of the State of New York, Queens County, Index No. 012636/2015 (NYSCEF Index No. 721778/2020).

    **Response**: Admit that there was a divorce proceeding, date of the commencement of the divorce is denied for lack of knowledge.

**Request No. 6**: Admit that YOYO was a New York domestic business corporation that manufactured and distributed lip gloss and lip balm to the retail marketplace, including Dollar Tree, Walmart, and Target, for the teen and tween market.

    **Response**: Admit.

**Request No. 7:** Admit that in 2008, during the Debtor's marriage with Athanasios, the Debtor acquired an ownership interest in YOYO.

    **Response**: Admit.

**Request No. 8**: Admit that YOYO continued to operate through and including at least October 7, 2021.

    **Response:** Admit.

**Request No. 9:** Admit that at the time of the commencement of the Divorce Action, the Debtor was at least a 42.88% shareholder in YOYO.

    **Response**: Deny. The Debtor's true equity interest was 25%.

**Request No. 10:** Admit that in 2015, the Debtor transferred approximately 17.88% of her shares of YOYO to the Defendant, resulting in the Debtor owning 25% of the shares of YOYO and the Defendant owning 75% of YOYO.

    **Response**:  Deny.

**Request No. 11**: Admit that the Debtor did not receive any monetary or other valuable consideration in exchange for the transfer of approximately 17.88% of her shares of YOYO to the Defendant in 2015.

    **Response:** Deny.

**Request No. 12**: Admit that during the pendency of the Divorce Action, on or about October 1, 2018, the Debtor transferred her remaining 25% of the shares of YOYO to the Defendant.

    **Response:** Admit.

**Request No. 13:** Admit that the Debtor did not receive any monetary or other valuable consideration in exchange for the Transfer of her remaining 25% shares of YOYO to the Defendant on or about October 1, 2018.

    **Response:** Deny.

**Request No. 14:** Admit that on or about October 1, 2018, at a meeting of the board of directors of YOYO, it was resolved that 25% of the shares of YOYO were transferred from the Debtor to the Defendant.

    **Response:** Admit.

**Request No. 15:** Admit that on or about October 1, 2018, the Debtor and the Defendant signed the corporate minutes of the board of directors meeting of YOYO, which approved and ratified the transfer of shares from the Debtor to the Defendant.

    **Response:** Admit.

**Request No. 16:** Admit that on or about October 1, 2018, and as a result of the Transfer, the Defendant became the 100% owner of YOYO.

    **Response:** Admit.

**Request No. 17: Admit** that an appraisal report dated September 28, 2021, prepared pursuant to the state court's order in the Divorce Action, by Mark Gottlieb, C.P.A., a neutral forensic accountant, valued the marital portion of YOYO at $505,000.00.

**Response**: Deny for lack of knowledge, as Defendant was not a party to the proceeding stated.  Defendant also objects that this request improperly seeks the admission of a pure question of law (marital estate).

**Request No. 18:** Admit that the value of the Debtor's interest in the shares of stock in YOYO at the time of the Transfer was $252,500.00.

**Response**: Deny.

**Request No. 19:** Admit that the Automatic Orders, as required by New York Domestic Relations Law § 236(B)(2)(b) and 22 NYCRR § 202.16, became binding on the Debtor upon the commencement of the Divorce Action.

**Response:** Defendant objects that this request improperly seeks the admission of a pure question of law.

**Request No. 20:**  Admit that the Automatic Orders prohibited the Debtor from transferring, encumbering, concealing, or in any way disposing of any property without the consent of Athanasios or order of the state court.

**Response:** Defendant objects that this request improperly seeks the admission of a pure question of law.

**Request No. 21:**  Admit that the Transfer violated the lawful mandates of the Automatic Orders, which prohibited the transfer or disposal of marital assets without consent or court order.

**Response:** Defendant objects that this request improperly seeks the admission of a pure question of law.

**Request No. 22:** Admit that on or about June 21, 2022, the Debtor was adjudged in civil contempt...

**Response**: Admit that a contempt order was entered against the Debtor, lack knowledge about the precise date.

**Request No. 23**: Admit that the Contempt Order is a final, non-appealable order.

**Response:** The Defendant objects that this request improperly seeks the admission of a pure question of law.

 **Request No. 24:** Admit that the Contempt Order found:

> It [is] undisputed that (1) upon the commencement of [the Divorce Action] on October 15, 2015, the automatic orders, as required by Domestic Relations Law § 236(B)(2)(b) and 22 NYCRR § 202.16, became binding on [the Debtor]; (2) YOYO Lip Gloss, Inc. is a marital asset; and (3) after

commencement, [the Debtor], without the consent or knowledge of [Athanasios], transferred her ownership in YOYO Lip Gloss, Inc. to a third party.

**Response to Nos. 24** Defendant objects to this request as irrelevant and seeking a legal conclusion. Admit that the Contempt Order contains the quoted language

**Request No. 25.** Admit that the Contempt Order further found that the Debtor's actions in disobeying the lawful mandate of the court which prohibited her from transferring or dissipating a marital asset, were calculated to, and actually did, defeat, impair, impede or prejudice the rights or remedies of Athanasios in the Divorce Action and that the misconduct of the Debtor consisted of an omission to perform an act or duty which it was in her power to perform.

**Response:** Admit that the Contempt Order contains the quoted language. Deny the factual accuracy of the findings insofar as they conflict with corporate records, tax returns, and evidence that the transfers were for fair equivalent value and without intent to hinder creditors.

**Request No. 26:** Admit that the state court in the Contempt Order found that the Divorce Action is a "vigorously contested matrimonial action."

**Response:** Defendant objects that this request improperly seeks the admission of a pure question of law, also objects to this request as irrelevant.

**Request No. 27**: Admit that the Transfer was made within the six (6) year reach-back period under the DCL.

**Response:** Defendant objects that this request improperly seeks the admission of a pure question of law.

**Request No. 28**: Admit that at the time of the Transfer, the Debtor was insolvent or that the Transfer rendered the Debtor insolvent.

**Response:** Defendant objects that this request improperly seeks the admission of a pure question of law, however deny that Debtor was ever insolvent as her assets exceeded her liability at the time of Transfer.

**Request No. 29**: Admit that the Debtor did not receive fair consideration in exchange for the Transfer.

**Response**: Deny.

**Request No. 30:** Admit that at the time of the Transfer, the Debtor maintained a Chase Sapphire credit card (account ending in 3030) with an outstanding balance.

**Response:** Admit

**Request No. 31:** Admit that for the billing cycle from July 11, 2018, through August 10, 2018, with a payment due on September 7, 2018, the Debtor owed Chase $32,459.36.

**Response:** Defendant objects to this request as irrelevant. Subject to those objections, Defendant admits that during the said period, the debt was owed by Debtor to Chase.

**Request No. 32.** Admit that the Debtor carried over a balance, and for the billing cycle from August 11, 2018, through September 10, 2018, with a payment due on October 7, 2018—post-Transfer—the Debtor remained indebted to Chase in the amount of $31,941.23.

**Response 32.** Admit as to the existence of the account and the stated balances in 2018; further state that all such obligations were satisfied in full in 2021 and did not remain outstanding.

**Request No. 33:**   Admit that the Debtor was indebted to unsecured creditors as of the date of the Transfer.

**Response 33:** Admit that the Debtor had ordinary course credit-card obligations; deny that the Transfer prejudiced any creditor, as all such debts were subsequently paid and corporate liabilities were assumed by Defendant.

**Request No. 34:** Admit that Athanasios was a creditor of the Debtor as of the date of the Transfer.

**Response :** Deny. Equitable-distribution claims do not constitute "creditor."

**Request No. 35:** Admit that at the time of the Transfer, the Debtor was a party to the Divorce Action with Athanasios.

**Response**: Admit.

**Request No. 36:**   Admit that the Transfer was made without the consent or knowledge of Athanasios.

**Response:** Deny. The Transfer was documented in corporate minutes and tax filings available to all shareholders.

**Request No. 37:** Admit that the Transfer was made with the actual intent to hinder, delay, or defraud the Debtor's creditors, including Athanasios.

**Response:** Deny.

**Request No. 38:** Admit that the Defendant, as the Debtor's daughter, had knowledge of the Debtor's pending Divorce Action with Athanasios at the time of the Transfer.

**Response:** Admit.

**Request No. 39:** Admit that the Transfer... was not disclosed to Athanasios prior to or at the time of the Transfer.

**Response:** Deny. The Transfer was reflected in corporate records and tax filings.

**Request No. 40:** Admit that the Transfer was made as part of a scheme that started with the commencement of the Divorce Action to divest the Debtor's interest in YOYO.

**Response**: Deny.

**Request No. 41:**   Admit that the Transfer was deliberately structured to reduce the marital assets available to Athanasios in the Divorce Action.

**Response:** Deny. The transfers reflected legitimate business succession and compensation for Defendant's services and debt assumption.

**Request No. 42:** Admit that the Defendant did not pay fair value for the 25% shares of YOYO transferred to her on or about October 1, 2018.

**Response:**  Deny.

**Request No. 43.** Admit that the Defendant was aware that the Debtor did not receive fair consideration for the Transfer.

**Response:** Deny.

**Request No. 44.** Admit that following the Transfer, the Defendant continued to operate YOYO.

**Response**: Admit, in order to wind down operations and satisfy remaining obligations.

**Request No. 45.** Admit that the Defendant benefited from receiving 100% ownership of YOYO as result of Transfer.

**Response:** Deny. Defendant did not benefit rather paid way more in assumption of the liabilities and paying the corporate debts.

Dated: November 12, 2025
New York New York                                    Respectfully Submitted,
                                                     */s/karamvirdahiya*


                                                     DAHIYA LAW OFFICES LLC
                                                     Attorney for the Defendant
                                                     75 Maiden Lane, Suite 606
                                                     New York, New York 10038